UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

JOSEPH FRANCO,

                                 Plaintiff,

  -against-

THE CITY OF NEW YORK, OSMAN HERRERA,
individually, PATRICK MORAN, individually,
GIOVANNI IANNIELLO, individually,
CHRISTOPHER VOLPE, individually, ANTHONY
DINOME, individually, and TERESA NEAL,
individually,

                              Defendants.
---------------------------------------------------------------------X

Civil Case No:
19-cv-5905

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, JOSEPH FRANCO, by and through his attorneys DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants THE CITY OF NEW YORK by and through its municipal agency, the NEW YORK CITY DEPARTMENT OF SANITATION, OSMAN HERRERA, PATRICK MORAN, GIOVANNI IANNIELLO, CHRISTOPHER VOLPE, and ANTHONY DINOME, and TERESA NEAL (collectively referred to as "Defendants,") upon information and belief as follows:

**NATURE OF CASE**

Plaintiff, JOSEPH FRANCO, complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of,

*inter alia*, sex/gender discrimination, sexual assault, hostile work environment and retaliation by Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. Plaintiff, JOSEPH FRANCO, submitted a complaint of Discrimination to the New York City Commission on Human Rights on or around September 28, 2019 which was assigned Complaint Number: M-E-OS-18-39316-E.

4. The U.S. Equal Employment Opportunity Commission ("EEOC") assigned Plaintiff's complaint  the federal charge number: 520-2019-01727.

5. On or about July 24, 2019, Plaintiff, JOSEPH FRANCO, received a 90-day Right to Sue Letter from the EEOC.

6. Plaintiff has initiated this lawsuit within 90 days of receiving the Right To Sue letter from the EEOC.

7. Plaintiff satisfied all administrative prerequisites and is filing this case within the applicable 90 day limitations period.

8. Venue is proper in this court, as the events giving rise to this action arose in Queens County, within the Eastern District of New York.

## PARTIES

9.  At all times material, Plaintiff, JOSEPH FRANCO, ("Plaintiff" or "FRANCO") was and is an individual male who is a resident of the State of New York, Bronx County.

10. At all times material, Defendant, THE CITY OF NEW YORK, (hereinafter referred to as "CITY" and/or "DSNY") was and still is a municipal entity duly authorized and existing under the laws of the State of New York.

11. At all times material, NEW YORK CITY DEPARTMENT OF SANITATION (hereinafter referred to as "DSNY") was and still is an agency maintained by Defendant CITY, as authorized by the laws of the State of New York and operates as an agency under the control of Defendant CITY.

12. Defendant DSNY, maintains its Central Repair Shop (hereinafter referred to as "CRS") at 52-35 58th Street Woodside, New York 11377.

13. At all times material, Defendant OSMAN HERRERA (hereinafter referred to as "HERRERA") was and still is an employee of Defendant, DSNY, who acts in an unofficial supervisory capacity with respect to Plaintiff's employment.

14. At all times material, Defendant PATRICK MORAN (hereinafter referred to "MORAN") was and still is a Supervisor employed by Defendant, DSNY, and had supervisory authority over Plaintiff with regard to his employment, including disciplinary decisions over Plaintiff's employment.

15. At all times material, Defendant GIOVANNI IANNIELLO (hereinafter referred to "IANIELLO") was and is a Deputy Director at Defendant, DSNY, and had supervisory authority over Plaintiff with regard to his employment, including disciplinary decisions over Plaintiff's employment.

16. At all times material, Defendant CHRISTOPHER VOLPE (hereinafter referred to "VOLPE") was and is a Deputy Director at Defendant, DSNY, and had supervisory authority over Plaintiff with regard to his employment, including disciplinary decisions over Plaintiff's employment.

17. At all times material, Defendant ANTHONY DINOME (hereinafter referred to as "DINOME") was and is an employee at Defendant, DSNY, who acts in an unofficial supervisory capacity with respect to Plaintiff's employment.

18. At all times material, Defendant TERESA NEAL (hereinafter referred to as "NEAL") was and is Director of DSNY's office of Equity Diversity and Inclusion at Defendant CITY, who acts in a managerial capacity with respect to Plaintiff's employment.

## STATEMENT OF FACT

19. Around March 2016, Defendant, DSNY, hired Plaintiff as a metal work mechanic in its CRS.

20. Plaintiff has over two (2) decades of experience in metalwork and possesses various licenses and certifications required in order to do his job.

21. Within a few months after Plaintiff started his job in the CRS, Claimant noticed that Defendant, HERRERA, frequently engaged in habitual sexual touching of his co-workers. In particular, HERRERA would press his crotch and penis into the backside of his male co-workers when they were bent over at work.

22. HERRERA never engaged in this inappropriate sexual touching of any female coworkers.

23. Around February 2018 and continuing up through July 2018, Defendant, HERERRA, began subjecting Plaintiff to unwelcomed sexual assault, harassment and inappropriate sexual advances and sexual contact.

24. By way of example only, around the second week of February 2018, Plaintiff, was attending to a truck in his work bay, when Plaintiff bent over to repair the truck Defendant HERRERA crept up behind Plaintiff and sexually assaulted Plaintiff by thrusting and grinding Defendant HERRERA's crotch and penis into Plaintiff's backside.

*25.* Plaintiff was shocked and mortified at the unwanted and inappropriate sexual assault he had just experienced and immediately told HERRERA *"what are you doing? I don't like that, don't do that."*

26. In response, Defendant, HERRERA, began laughing at Plaintiff and sarcastically stated "**I THOUGHT YOU NEEDED HELP.**"

27. In the months following that initial inappropriate sexual conduct by HERERRA upon Plaintiff, HERRERA openly engaged in similar inappropriate homoerotic sexual contact with Plaintiff and at least two other male coworkers in the CRS that Plaintiff witnessed.

28. Around late February 2018, while Plaintiff was bent over working on a truck in his work bay Defendant, HERRERA approached Plaintiff from behind and began rubbing and grinding HERRERA's crotch up against Plaintiff's buttocks. Plaintiff immediately told HERRERA "stop! What do you think you're doing? Don't touch me."

29. In response to Plaintiff's objections to Defendant HERERRA's unwanted sexual touching, Defendant HERRERA laughed at Plaintiff.

30. Around early March 2018, while Plaintiff was on a break, resting with his eyes closed, Defendant HERRERA approached Plaintiff and began to seductively caress Plaintiff's arm. Plaintiff instantly opened his eyes to see that Defendant HERRERA was standing over Plaintiff staring at him and caressing Plaintiff's arm. Plaintiff immediately pulled his arm away, stood

up from his seat and in exasperation at the continuous unwanted sexual touching by HERRERA, stated "don't ever touch me again!"

31. Within an hour of this encounter Claimant complained to Defendant, MORAN, about Defendant HERRERA's repeated sexual harassment and inappropriate sexualized touching of Plaintiff and others. Plaintiff explicitly requested to be kept entirely separate from HERRERA because of HERERRA's demonstrated unwillingness to refrain from unwanted touching Plaintiff.

32. MORAN took no substantive investigatory or remedial action and simply shrugged while walking away.

33. Defendant HERRERA serves in a de facto supervisory position by virtue of the supervisory duties delegated to him by Defendants VOLPE, MORAN and IANELLO and his close personal relationship Defendants VOLPE, MORAN and IANELLO, who hold managerial titles.

34. In the absence of a formal foreman Defendant HERRERA has been assigned as acting supervisor.

35. Despite Plaintiff's complaint, Defendant MORAN took no immediate or corrective action to stop or report HERRERA's sexual harassment of Plaintiff up the chain of command.

36. Upon information and belief, because of their close personal relationship, MORAN informed HERRERA of Plaintiff's complaint against HERRERA.

37. On or about July 25, 2018, Plaintiff, while in his work bay, was approached by Defendant, HERRERA. HERRERA began berating and verbally abusing Plaintiff about a truck that was unknown to Plaintiff and was not part of his work-load in retaliation for the complaints Plaintiff made against HERERRA.

38. Plaintiff requested that HERRERA leave him alone and let him do his job.

39. On or about July 27, 2018, Plaintiff was approached by Defendant MORAN who demanded that Plaintiff accompany him to Defendant VOLPE's office. Once in the office MORAN berated Plaintiff and demanded that Plaintiff explain the situation between himself and Defendant HERRERA. Plaintiff explained to MORAN and VOLPE that he and his co-workers were being routinely subjected to sexual harassment and unwanted sexual physical contact by Defendant HERRERA.

40. In response to Plaintiff's complaint VOLPE told him that "**WOW, THAT'S A SERIOUS ACCUSATION**," and then stating, "**YOU KNOW THIS IS [A DSNY Internal EEO Office] EEO ISSUE.**"

41. In an obvious attempt to intimidate and silence Plaintiff, Defendant VOLPE warned Plaintiff against being "**A CRUSADER**" and discouraged Plaintiff from taking his complaint to the internal DSNY EEO Office.

42. Defendant VOLPE derisively told Plaintiff he is, "**LIKE A SNOWFLAKE, YOU'RE ALL OVER THE PLACE**" for complaining about Defendant HERRERA's harassment.

43. After Plaintiff's complaints about Defendant HERERRA, Defendant, VOLPE, in reference to the close relationship between Defendants, HERRERA, MORAN and VOLPE, menacingly stated: "**SOME PEOPLE HAVE A HOOK AND SOME PEOPLE ARE UNTOUCHABLE.**"

44. In a further attempt to silence, threaten and intimidate Plaintiff into withdrawing his complaint about Defendant HERERRA's sexual harassment and inappropriate sexual touching of Plaintiff, Defendant VOLPE, menacingly stated, "**YOU KNOW, MAYBE YOU SHOULD**

**TALK TO SOMEONE, MAYBE YOU HAVE A PSYCHOLOGICAL PROBLEM OF SOME KIND.**"

45. Defendant VOLPE threatened to "**SEND YOU [Plaintiff] DOWNTOWN**" for the purpose of being drug-tested and psychologically evaluated.

46. A few days later, Plaintiff was called into Defendant VOLPE's office again. Once inside VOLPE immediately falsely accused Plaintiff of workplace hostility because of his complaint about sexual harassment, unwanted sexual touching and retaliation, stating "**PEOPLE ARE SAYING YOU ARE CAUSING PROBLEMS.**" Plaintiff objected that he had made several complaints about Defendant HERRERA's sexual harassment and unwanted sexual touching, all of which remained unaddressed by Defendants MORAN and VOLPE.

47. In response Defendant, VOLPE, became irate and shouted at Plaintiff "**I'M THE BOSS HERE! I'M IN CHARGE! I DON'T WANT TO HEAR ANYTHING FROM YOU. YOU HAD YOUR CHANCE WITH THE EEO!**"

48. Defendant VOLPE, continued angrily yelling at Plaintiff stating, "**I DON'T WANT TO HEAR ANYMORE. I DON'T WANT TO HAVE TO TALK TO YOU AGAIN!**" before telling Plaintiff to get out of Defendant VOLPE's office.

49. Around late July or early August 2018, Plaintiff filed a formal complaint with Defendant DSNY's Equal Employment Opportunity Office (hereinafter referred to as "EEO") Investigator Jose Silvestre (hereinafter referred to as "SILVESTRE") and Director, Defendant NEAL.

50. On or about September 7, 2018, DSNY Director Edward Rasmussen came over to a coworker's work bay and loudly announced within earshot of numerous other employees, that Defendant NEAL was seeking to speak with Plaintiff and two (2) of his co-workers who had also

complained about sexual harassment by Defendant, HERRERA, thereby breaching the confidentiality and anonymity of the Plaintiff's EEO complaint.

51. On or about September 10, 2018, one of Plaintiff's coworkers, Sean McCaffrey (hereinafter referred to as "McCaffrey") stated that Defendant, MORAN, had been openly making disparaging comments about Plaintiff.

52. McCaffrey claimed that Defendant, MORAN stated that "**[Plaintiff] WENT TO THE EEO [About Defendant HERRERA's Sexual Harassment] NOW MANAGEMENT'S EMBARRASSED AND PISSED OFF**."

53. McCaffrey announced that Defendant MORAN, also issued an order that "**METAL WORK MECHANICS WILL NO LONGER BE GETTING OVERTIME BECAUSE [Plaintiff] WENT TO EEO ABOUT [Defendant HERERRA]**."

54. Prior to this point, Plaintiff and the rest of the metal work mechanic co-workers were regularly allowed to work overtime.

55. In around September of 2018, Plaintiff and the other employees in his shop all stopped receiving overtime.

56. Defendants made sure that the entire shop was on notice that they would no longer be receiving overtime because of Plaintiff's complaint of sexual harassment against Defendant HERRERA to DSNY's EEO office.

57. Defendants' removal of overtime for Plaintiff and his co-workers was done in retaliation for the EEO complaints made by Plaintiff about Defendant HERERRA's sexual harassment and unwanted sexual touching of Plaintiff and other workers in the shop.

58. Defendants' retaliatory actions were intended to not only punish Plaintiff, but to isolate Plaintiff from all of the other affected workers because they would blame Plaintiff for complaining, which resulted in Defendants taking away their overtime.

59. By way of an example only, Plaintiff's supervisor Defendant MORAN demanded a doctor's note for sick time off taken by Plaintiff on or around September 12, 2018, stating, "**YOU'RE GOING TO NEED A NOTE.  IF YOU DON'T HAVE A NOTE YOU'RE GOING TO HAVE A PROBLEM,**" even though Plaintiff's union agreement does not require a doctor's note under such circumstances.

60. No other co-workers who requested sick leave during that time period were similarly threatened if they did not provide a doctor's note.

61. It is clear that Defendant MORAN's demand for a note was a threat to harass Plaintiff. MORAN's demand was intended to intimidate Plaintiff and constitutes an act of further retaliation against Plaintiff for his complaints of sexual harassment, unwanted sexual touching, abuse and retaliation.

62. Around September 2018, Defendant IANNIELLO became hypercritical of Plaintiff and began openly threatening, bullying and intimidating Plaintiff, including threatening Plaintiff with frivolous write-ups, because of Plaintiff's complaints to the EEO about Defendant HERERRA's sexual harassment.

63. Defendant IANELLO was fully aware of the complaints Plaintiff made to Defendants' EEO office because of Defendant RASMUSSEN's breach of confidentiality regarding Plaintiff's complaints of sexual harassment and unwanted sexual touching by Defendant HERRERA.

64. On or about September 24, 2018, another metal work mechanic, Assan Diop (hereinafter referred to as "DIOP") mentioned to one of the other metal work mechanics, Gabriel Dalmau,

who also complained about HERERRA's sexual harassment, that Defendant IANIELLO

"**KNOWS THAT YOU TOLD THE EEO ABOUT [Ianielleo's Retaliatory Harassment]**."

65. Around November 8, 2018 Defendant, DINOME, deliberately used a City-owned DSNY

vehicle to push in to a trash can so that the trash can hit Plaintiff while Plaintiff was in his work

bay.

66. Plaintiff was struck with the trash can but fortunately suffered no physical injury from it.

67. Plaintiff immediately reported the assault and battery to Plaintiff's supervisor, Defendant

MORAN.  MORAN did not make any indication that he would take any action based on the

complaint, stating: "**WELL, I DIDN'T SEE IT**."

68. Because Defendant, MORAN took no investigatory or remedial action regarding the retaliatory

assault and battery by Defendant DINOME, Plaintiff complained to the Deputy Director,

Defendant VOLPE about the incident who in turn refused to write a complaint against

Defendant DINOME, in violation of company policy, and instead took the highly unusual step

of calling the NYPD to report the 'crime' so that it would look like Plaintiff was blowing the

incident out of proportion, was trying to cause problems and "***rat out***" his coworker, Defendant

DINOME to the police.

69. Soon after, around November 14, 2018, Defendants, instead of taking the appropriate action

of investigating and remedying the ongoing retaliation against Plaintiff, took the highly

unorthodox and retaliatory step of transferring Plaintiff to work in the 4th Floor of the CRS.

70. This transfer was clearly in retaliation for the numerous complaints Plaintiff has made,

including to the EEO as well as the recent complaint he made that resulted in a call to the

NYPD, because per Claimant's union's collective bargaining agreement, the least senior

employee (e.g. the most recent hire) will be the first to be transferred in the event that a worker is needed in another floor.

71. Plaintiff complained about this improper transfer to Defendant NEAL, who dismissed Plaintiff's complaint out of hand and took no investigatory or remedial action.

72. Plaintiff was not the least senior employee, yet he was transferred to the 4th floor in violation of the collective bargaining agreement.

73. Around December 17, 2018, Defendant MORAN, ordered that Plaintiff is "**NO LONGER ALLOWED ON THE 5TH FLOOR**," which was where Plaintiff has worked for nearly three (3) years.

74. No other staff members have been similarly prohibited from entering another work area.

75. Defendants sexually harassed, sexually assaulted, assaulted and battered, discriminated against and retaliated against Plaintiff because of his sex and because he complained of sexual harassment, unwanted sexual touching and retaliation.

76. As a result of Defendants' actions against Plaintiff, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

77. The above are just some of the examples of the unlawful discrimination and retaliation to which the Defendants subjected, and continue to subject, Plaintiff to on an ongoing and continuous basis.

78. At all times material, Defendants and Defendants' supervisors acted with deliberate indifference to the discrimination Plaintiff faced.

79. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

80. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting

condition.

81. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to his professional reputation.

82. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

83. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants, jointly and severally.

84. The above are just some of the examples of the unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

85. Defendants' actions constituted a continuing violation of the applicable federal, state and city laws.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**<u>(Not Against Individual Defendants)</u>**

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

87. Title VII states in relevant part as follows:

"(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national origin."

88. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex and gender.

89. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's sex and gender.

90. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

### AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII (Not Against Individual Defendants)

91. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

92. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

93. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

94. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

99.  Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

100. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

101. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his sex/gender and by creating a hostile work environment.

102. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

**AS A FOURTH CAUSE OF ACTION**
**FOR AIDING & ABETTING UNDER**
**NEW YORK STATE LAW**

**(Against All Defendants)**

103. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

104. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

105. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS AN FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

106. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

107. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

108. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

109. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

110. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

111. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of his sex/gender.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

112. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

113. The New York City Administrative Code Tide 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…."

114. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(7) by discriminating against Plaintiff because of his opposition to the unlawful employment practices of Defendants as Plaintiff's employer.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**

**(Against All Defendants)**

115. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

116. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

117. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS A NINTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

118. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

119. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

120. Defendants violated the above section as set forth herein.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

121. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

122. Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

123. Defendants violated the above section as set forth herein.


**AS AN ELEVENTH CAUSE OF ACTION**
**FOR ASSAULT AND BATTERY**
**(AGAINST DEFENDANT HERERRA)**

124. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

125. The aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendant HERERRA who did suddenly and without provocation,   physically assault and batter Plaintiff, herein causing Plaintiff to sustain damages; in that Defendant HERERRA did conduct himself in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiff herein; in that said Defendant was physically abusive; in behaving in a disorderly manner; in using unnecessary, excessive and unlawful touching against the plaintiff; in willfully and maliciously assaulting and battering the Plaintiff herein.

126. § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to

require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

127. As a result of Defendant HERRERA's acts of assault and battery, Plaintiff has been damaged in an amount to be determined at the time of trial.


### AS AN TWELFTH CAUSE OF ACTION
### FOR ASSAULT AND BATTERY
### (AGAINST DEFENDANT DINOME)

128. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

129. The aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendant DINOME who did suddenly and without provocation,  physically assault and batter Plaintiff, herein causing Plaintiff to sustain damages; in that Defendant HERERRA did conduct himself in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiff herein; in that said Defendant was physically abusive; in behaving in a disorderly manner; in using a City-owned DSNY vehicle to push in to a trash can so that the trash can would hit Plaintiff while Plaintiff was in his work bay; in willfully and maliciously assaulting and battering the Plaintiff herein.

130. § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or

aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

131. As a result of Defendant DINOME's acts of assault and battery, Plaintiff has been damaged in an amount to be determined at the time of trial.


## AS A THIRTEENTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

132. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

133. Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

134. Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

135. Defendants caused Plaintiff to fear for Plaintiff's own safety.

136. Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

137. As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

### **JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.

Dated:  New York, New York
　　　　October 18, 2019

**DEREK SMITH LAW GROUP, PLLC**

By: 　**/s/ Seamus Barrett**　　　

Seamus Barrett, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760