UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                         :

**JOSEPH FRANCO**,                    :

              Plaintiff,      :

                      :    **MEMORANDUM DECISION AND ORDER**

      – against –        :

                         19-CV-5905 (AMD) (CLP)

**CITY OF NEW YORK, PATRICK MORAN,**    :
**GIOVANNI IANNIELLO, CHRISTOPHER**
**VOLPE, OSMAN HERRERA, ANTHONY**    :
**DINOME,** and **TERESA NEAL**,

               Defendants.  :

                      :
-------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

      The plaintiff brings this employment discrimination action against New York City and various individual defendants, alleging violations of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Before the Court is the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

### I.    The Plaintiff's Employment with the Sanitation Department

      In March 2016, the plaintiff began working as a metal work mechanic in the central repair shop ("CRS") of the New York City Department of Sanitation ("DSNY"). (Defs 56.1

---

[1] Unless otherwise noted, the factual background is based on the Court's review of the record submitted by the parties. Some of the record is incomplete. However, "it is not the role of the Court to search the summary judgment record for evidence supporting a party's motion or opposition thereto." *Knight v. Nassau Cnty.*, No. 17-CV-958, 2019 WL 3817392, at *4 (E.D.N.Y. Aug. 14, 2019). The Court has reviewed record citations in the defendants' Rule 56.1 statement, which includes the plaintiff's responses and objections (ECF No. 64 ("Defs. 56.1")), as well as the plaintiff's proposed Rule 56.1

¶ 7.)  He was hired as a "provisional employee" (*id.* ¶ 8), and assigned to work in the Bureau of Maintaining Equipment ("BME") (ECF No. 63-3, Transcript of the Plaintiff's Deposition ("Pl. Dep.") 29:23–30:5).

Giovanni Ianniello was the CRS supervisor when the plaintiff started at DSNY.  (Defs. 56.1 ¶ 10.)  In 2017, Patrick Moran became the new CRS supervisor.  (*Id.* ¶ 11.)  Christopher Volpe[2] was Moran's supervisor and the deputy director.  (*Id.* ¶ 13.)  Anthony Dinome was the BME "shop steward," who was responsible for "keeping a running list of who worked overtime in the past and who had the most seniority."  (*Id.* ¶¶ 12, 16.)  Teresa Neal was the Director of Office of Equity, Diversion, and Inclusion ("OEDI").  (*Id.* ¶ 14.)  And Osman Herrara, a metal work mechanic in the BME, was the "snapper," the employee who distributed work assignments to other BME mechanics.  (*Id.* ¶ 15.)

## II.    February and March 2018: Alleged Sexual Harassment

The plaintiff claims that Herrera sexually harassed him three times between February and March of 2018.  The defendants deny these allegations.

In the middle of February 2018, the plaintiff was "bent over to repair [a] truck[,]" when Herrera "crept up behind" him and started "thrusting and grinding [his] crotch and penis into Plaintiff's backside."  (Pl. 56.1 ¶ 7.)  When the plaintiff told Herrera to stop and that he did not like that, Herrera responded, "oh, I just thought you needed some help." (Pl. Dep. 36:21-23.)  He laughed and walked away.  (*Id.* 37:5-9.)

---

counterstatement, which he submitted before the pre-motion conference, and which also includes the defendants' responses and objections (ECF No. 55 ("Pl. 56.1")).  All citations to these documents incorporate the responses and objections of the opposing party.  The Court construes the facts in the light most favorable to the plaintiff, the non-moving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2015).

[2] Volpe died on January 9, 2021, while this action was pending.  (ECF No. 58.)

The same thing happened in late February 2018.  The plaintiff was bending over a truck when Herrera came up behind him and "began rubbing and grinding his genitals" on the plaintiff's buttocks.  (Pl. 56.1 ¶ 10.)  The plaintiff told him to stop.  Herrera laughed and walked away.  (Pl. Dep. 45:1-11.)

There was another incident about a week later, in early March 2018.  This time, the plaintiff was dozing off during his break, when Herrera came over and "put[] his hand on [the plaintiff's] arm caressing down to [his] hand."  (*Id.* 64:15-19.)  Startled, the plaintiff jumped out of his chair and yelled that Herrera must never touch him again.  (*Id.* 64:23-24, 65:19-20.)  Herrera smiled and walked away.  (*Id.* 65:4-6.)

Shortly thereafter, the plaintiff complained to Moran about Herrera's conduct.  (Pl. 56.1 ¶ 12.)  The plaintiff accused Herrera of sexual harassment and told Moran that he did not want Herrera to be around him or touch him.  (Pl. Dep. 66:2-6.)  He also told Moran that this "has to stop."  (*Id.*)  Moran shrugged his shoulders and walked away.  (*Id.*)

After waiting for Moran to do something — although the plaintiff did not make any specific demand — the plaintiff went to Volpe, the deputy director.  (*Id.* 68:9-11.)  The plaintiff told Volpe about Herrera's conduct and Moran's indifference to it.  (*Id.* 69:4-11.)  Volpe acknowledged that it was a serious accusation and an "EEO" issue.  (*Id.* 71:20-22.)

**III.    July 2018: Meeting with Moran and Volpe and Formal Complaint**

In late July 2018, Herrera confronted the plaintiff about an unfinished repair job in the shop.  (Pl. 56.1 ¶ 15.)  According to the plaintiff, an overtime crew worked on the truck, he was not assigned to it, and he did not know why he was being singled out.  (*Id.*)  Herrera yelled at him and followed him around when he tried to walk away.  (Pl. Dep. 74:18–75:3.)  Herrera also reminded him that he was a provisional employee, implying that he had fewer employment protections.  (*Id.*)

Within the hour, Moran arrived and brought the plaintiff to Volpe's office.  (*Id.* 75:4-6.)

Volpe told the plaintiff that he was causing problems and that he was getting emails about him.

(*Id.* 75:7-19.).  When the plaintiff responded that he had previously reported Herrera's conduct to

Volpe and Moran, Volpe called him a "snowflake" and a "crusader," and said that some

employees were "untouchable."  (*Id.*)  Volpe also threatened to send the plaintiff for a

psychological evaluation.  (*Id.* 117:19-22.)

A few days later on July 29, 2018, the plaintiff filed a formal complaint with the OEDI,

"alleging that he had been repeatedly sexually harassed by Defendant Herrera."  (Defs. 56.1

¶ 17.)  Neal was assigned to investigate.  (*Id.* ¶ 19.)  Over the next several months, OEDI

interviewed about fifteen employees, including the plaintiff.  (*Id.* ¶ 18.)  On December 8, 2018,

Neal informed Franco that she had completed her investigation into his complaint against

Herrera and concluded that "[a]t the present time, . . . the allegations of sexual harassment are

unsubstantiated."  (ECF No. 63-11 at 1.)

## IV.    August and September 2018: Overtime

In August and September 2018 — while the OEDI investigation was ongoing — the

BME employees stopped receiving overtime hours.  (ECF No. 69-5, Transcript of Marvin

Wellington's Deposition ("Wellington Dep.") 85:24–86:7.)  According to Moran, this was

simply because there were fewer trucks that needed work.  (ECF No. 63-4, Transcript of Patrick

Moran's Deposition ("Moran Dep.") 37:5-9.)

But the plaintiff and other BME employees testified otherwise.  They claim that before

the overtime was cut but after Neal had already interviewed some witnesses, Edward Rasmussen,

a DSNY Deputy Director, came to the shop floor and instructed Kevin Alexander, a BME

employee, to call Neal, who was doing the OEDI investigation.  (Pl. 56.1 ¶ 20; ECF No. 69-2,

Transcript of Kevin Alexander's Deposition ("Alexander Dep.") 60:15–61:2.)  Alexander was

4

taken aback that Rasmussen knew that he was being interviewed as part of the investigation, because Neal and the other OEDI investigator assured him that his interview with OEDI — and indeed, even the fact that he was being interviewed — was confidential.  (Alexander Dep. 60:9–61:15.)  A few days later, Sean McCaffrey, a metal work mechanic who was a part of the "in-group" and responsible for monitoring the overtime list, told the BME employees that no one was going to get overtime because the plaintiff filed an EEO complaint.  (Pl. 56.1 ¶ 21; Alexander Dep. 114:23–115:9, 117:15-18.)

**V.    November 2018: The Truck Incident**

On November 18, 2018, while the OEDI investigation was still pending, the police were called to CRS after an incident between the plaintiff and Dinome, also a member of the "in-group."  (Defs. 56.1 ¶ 24; Alexander Dep. 121:8–16.)  The plaintiff was cleaning a hydraulic liquid spill in one of the work bays when Dinome started reversing a truck into the bay.  (Defs. 56.1 ¶ 25; Pl. Dep. 101:22–102:21.)  As Dinome got closer to him, the plaintiff told him to wait until he cleaned the spill.  (Pl. Dep. 102:21–103:7.)  Dinome kept going, and hit the garbage can that the plaintiff was using to clean the spill, causing the can to hit the plaintiff.  (*Id.*)  The plaintiff and Dinome argued briefly and Dinome went to get Moran.  (*Id.* 103:7-13.)

When Moran arrived a couple of minutes later, the plaintiff explained what happened and told Moran that it was ridiculous.  (*Id.* 103:13-19.)  Moran replied that he had not seen it, implying that there was nothing for him to do.  (*Id.* 103:19.)  The plaintiff decided to talk to Volpe about what happened.  (*Id.* 103:19-21.)

As soon as the plaintiff got to the office, Volpe started yelling at him.  (*Id.* 104:3-4.)  The plaintiff said that he wanted to file a complaint against Dinome; Volpe responded that was not what they did and that the plaintiff had his chance when he filed the EEO complaint.  (*Id.* 104:4-10.)  Volpe suggested that they call the police so the plaintiff could make a report; he also said

that he had enough of the plaintiff. (*Id.* 104:10-15.) The plaintiff "begged" Volpe not to call the police because he was not hurt and did not want his co-workers to think he called the police on a co-worker. (*Id.* 104:13-23.) Volpe called the police anyway. (*Id.*) As the plaintiff feared, rumors circulated among BME employees that the plaintiff was the one who called the police. (Alexander Dep. 123:4-14.)

## VI.    November 2018: Transfer to Bureau of Building Maintenance

A day or two after the truck incident, and while the OEDI investigation was still pending, the plaintiff was transferred to the Bureau of Building Maintenance ("BBM"). (Defs. 56.1 ¶ 20.) The plaintiff objected and asked for an explanation. (Pl. Dep. 113:15-21.) He was told that the fourth floor "need[ed] a body" and that he was "being removed." (*Id.* 113:25.) The plaintiff protested that the most junior employee should be the first to be transferred if the need arose. (*Id.* 113:22-23.)

Although the BBM was in the same building as the BME, the plaintiff had to move to the fourth floor from the fifth floor. (Defs. 56.1 ¶¶ 20–21.) His hours changed slightly, too. At BME, he worked a 6:00 a.m. to 2:30 p.m. shift, but he had to work from 6:30 a.m. until 3:00 p.m. at BBM. (*Id.* ¶ 22.) His responsibilities were marginally different, but he was still a metal worker (Pl. Dep. 99:2–19), and his base salary remained the same. (Defs. 56.1 ¶ 23.)

The plaintiff complained to Neal because he was not given a satisfactory reason for the transfer. (Pl. Dep. 113:13–114:5.) The plaintiff also believed that he was transferred because of his EEO complaint; he thought that changes to his employment conditions had to go through Neal because the OEDI was still investigating his complaint. (*Id.*) Neal responded that it was not a big deal, and that the plaintiff was being transferred for his own safety. (*Id.*)

6

**LEGAL STANDARD**

Summary judgment is warranted only if the submissions, including deposition transcripts, affidavits, or other documentation show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute arises when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under governing law" qualify as "material," and "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment. *Id.* The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924, 2016 WL 3448578, at *2 (E.D.N.Y. June 17, 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"In considering a motion for summary judgment, the district court must draw all inferences in favor of the non-moving party, and may [grant summary judgment] only if the record reveals no genuine issue of material fact for trial." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258 (2d Cir. 2023) (internal quotation omitted). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (cleaned up). The moving party cannot prevail on summary judgment "if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Banks*, 81 F.4th at 258 (2d Cir. 2023) (quoting *Anderson*, 477 U.S. at 248).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 U.S. 130, 137 (2d Cir. 2008).

Given the "'elusive nature of intentional discrimination,' plaintiffs must often 'rely on bits and pieces of information to support an inference of discrimination.'" *Banks*, 81 F.4th at 259 (cleaned up) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)). Accordingly, "[b]ecause of the likelihood that 'direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* (cleaned up) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)). "The resulting 'mosaic of intentional discrimination' may be sufficient to show discrimination." *Id.* (cleaned up) (quoting *Vega*, 801 F.3d at 86). "Nonetheless, even in the discrimination context, a plaintiff must still present more than conclusory allegations to survive a motion for summary judgment." *Id.* (citing *Chertkova v. Conn. Gen. Life Ins.*, 92 F.3d 81, 92 (2d Cir. 1996)).

## DISCUSSION

The plaintiff did not respond to the defendants' arguments for summary judgment regarding the following claims: hostile work environment under Title VII, intentional infliction of emotional distress, assault and battery, and the individual claims against Volpe.[3] Accordingly, the plaintiff has abandoned those claims. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."). The Court therefore considers only the plaintiff's claims for discrimination and retaliation under federal, state, and city law.[4]

---

[3] The plaintiff's abandonment of the hostile work environment claim is discussed below.

[4] In any event, the Court agrees that the plaintiff's state tort law claims are untimely (ECF No. 65 at 5–8), and that the claims against Volpe should be dismissed because the plaintiff did not move to substitute after the defendants filed a notice of suggestion for death. (*Id.* at 4.) There is no basis, however, to dismiss Dinome for failure to prosecute. (*Id.* at 4–5.) Indeed, counsel for Dinome has appeared and the plaintiff has no obligation to depose any individual defendant.

**I.    Title VII and NYSHRL Disparate Treatment Claim**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  On a motion for summary judgment, courts analyze Title VII discrimination claims under the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Bonaffini v. City Univ. of New York*, 751 F.Supp.3d 67, 74 (E.D.N.Y. 2024) (citing *Ruiz v. Rockland County*, 609 F.3d 486, 491 (2d Cir. 2010)).  The plaintiff must first "establish a *prima facie* case of discrimination."  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  In order to satisfy this initial burden in a disparate treatment case, an employee must show that he: (1) belongs to a protected class; (2) is qualified for his position; and (3) suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  *Brown v. City Univ. of New York*, No. 21-CV-854, 2025 WL 638353, at *6 (E.D.N.Y. Feb. 27, 2025) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)).  If an employee can make that showing, a presumption of discrimination arises and "the burden then shifts to the employer to 'articulate a legitimate, non-discriminatory reason' for the disparate treatment."  *Vega* 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 802).  "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination."  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).  Because the plaintiff complains of conduct that pre-dates the October 11, 2019 amendment to the NYSHRL, the Title VII standard applies to the NYSHRL claim.  *McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015) (analyzing Title VII and NYSHRL claims under the same standard); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012)*, aff'd,* 713 F.3d 163

(2d Cir. 2013) ("Claims under the NYSHRL are analyzed under the same standards as federal discrimination claims."); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 65 (S.D.N.Y. 2020) (holding that the 2019 amendment to the NYSHRL is not retroactive).

The defendants do not dispute that the plaintiff is a member of a protected class and qualified for the position. The defendants argue that he has not sufficiently proven an adverse employment action and does not allege an inference of discrimination. As explained below, the plaintiff has not shown that he was subject to an adverse employment action. Accordingly, the defendants are entitled to summary judgment on the plaintiff's Title VII and NYSHRL discrimination claims.

Under Title VII, an adverse employment action is an action that imposes "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). The harm need not be significant or even material, but the adverse action "must have left [the plaintiff] worse off." *Id.* at 359. Moreover, "'terms or conditions' in an employment discrimination claim cover more than the 'economic or tangible' factors and applies beyond a 'narrow contractual sense.'" *Ciotti v. City of New York*, No. 23-CV-10279, 2025 WL 308022, at *13 (S.D.N.Y. Jan. 27, 2025) (alteration adopted) (quoting *Muldrow*, 601 U.S. at 354). Ultimately, to survive summary judgment, the plaintiff must show that the employer's actions "brought about some 'disadvantageous' change in an employment term or condition." *Muldrow*, 601 U.S. at 354.

Before the Supreme Court decided *Muldrow v. City of St. Louis, Missouri*, it was the rule in this circuit that a plaintiff had to prove a "materially adverse change" to establish a *prima facie* disparate treatment claim under Title VII. *See, e.g.*, *Muldrow*, 601 U.S. at 353, n.1 (explaining that the Court's opinions "resolve[s] a Circuit split over whether an employee

challenging a transfer under Title VII must meet a heightened threshold of harm," and noting the Second Circuit's "materially significant disadvantage" standard (quoting *Williams v. R. H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)).  The Second Circuit recognized in a summary order that "*Muldrow* . . . overruled our precedent, which required that the changes to a term or condition of employment be materially adverse."  *Back v. Hapoalim*, No. 24-1064-CV, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (summary order); *see also Anderson v. Amazon.com, Inc.*, No. 23-CV-8347, 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024) (observing that the "landscape has changed with the Supreme Court's decision in *Muldrow*").[5]

The plaintiff argues only one adverse employment action: the alleged sexual harassment. (ECF No. 68 at 15–16.)  He claims that "[b]eing forced to endure repeated sexual assault in the workplace is an adverse employment action."  (*Id.* at 15.)  Therefore, in order to survive summary judgment on his discrimination claim, the three alleged incidences of sexual harassment must amount to "some 'disadvantageous' change in an employment term or condition."  *Muldrow*, 601 U.S. at 354.

It is difficult to fit the plaintiff's theory of harm into the conceptual framework of a disparate treatment claim.  This is at least in part because it sounds more appropriately in other potential Title VII claims — most obviously, a hostile work environment claim.  *See, e.g., Desouza v. Off. of Child. & Fam. Servs.*, No. 18-CV-2463, 2019 WL 2477796, at *4 (E.D.N.Y.

---

[5] The Second Circuit has not yet opined on whether the "some harm" standard applies to adverse actions beyond the involuntary transfer context.  However, courts in the circuit have consistently held that it does, because the Supreme Court's "reasoning relies on the language of Title VII's anti-discrimination provision rather than anything special about transfers."  *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 90 (S.D.N.Y. 2024); *see also McCarthy v. Motorola Solutions, Inc.*, 21-CV-4020, 2024 WL 3965950, at *10, n.3 (E.D.N.Y. Aug. 28, 2024); *John v. Brooklyn Eye Ctr.*, No. 22-CV-6190, 2025 WL 317515, at *4, n.3 (E.D.N.Y. Jan. 28, 2025); *Anderson*, 2024 WL 2801986, at *10; *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir. 2024).  The Court finds this reasoning persuasive.

June 12, 2019) ("Though claims challenging disparate treatment, *quid pro quo* sexual

harassment, and hostile work environment are all claims of gender discrimination, they are

distinct causes of action governed by different analytical standards.").  For instance, the Supreme

Court held that claims of workplace sexual harassment under Title VII are actionable if the

alleged harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's]

employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*,

477 U.S. 57, 67 (1986) (internal quotations and citations omitted); *Patane v. Clark*, 508 F.3d

106, 110, n.1 (2d Cir. 2007) (noting that the plaintiff's "gender-based discrimination claim can

be divided into a discriminatory action claim and a hostile work environment claim").  Further,

"it is established 'without question, that when a supervisor sexually harasses a subordinate

because of the subordinate's sex, that supervisor "discriminates" on the basis of sex.'" *Redd v.

New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (alterations adopted) (quoting

*Meritor Sav. Bank, FSB*, 477 U.S. at 64).

This would seem the natural avenue for a discrimination claim under Title VII on these

facts.  For example, there is substantial record evidence that Herrera regularly engaged in

inappropriate conduct.  (*See, e.g.*, Pl. 56.1 ¶¶ 7–11; Alexander Dep. 36:21–39:5; Wellington

Dep. 42:14–45:7; ECF No. 69-6, Declaration of Joseph Edgar, ¶¶ 3–7; ECF No. 69-7,

Declaration of Daniel O'Hare, ¶¶ 8–10, 12.)[6]  However, the plaintiff, who is represented by

---

[6] The defendants ask the Court to strike the Edgar and O'Hare declarations, on the theory that "[i]t is well settled that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'" (ECF No. 71 at 2–3 (quoting *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).)  But the "sham issue of fact" doctrine does not apply to these declarations.  The doctrine "prohibits *a party* from defeating summary judgment simply by submitting an affidavit that *contradicts the party's* previous sworn testimony." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (first emphasis in original) (internal quotation omitted).  Neither Edgar nor O'Hare are parties to the action, which alone defeats the defendants' argument.  Moreover, the defendants do not argue that

counsel, chose not to pursue a hostile work environment claim under Title VII; he did not oppose

the defendant's summary judgment arguments on that claim and thus abandoned it. (*See* ECF

No. 65 at 17–19 (arguing for dismissal of the hostile work environment claim); ECF No. 68 at

13–16 (arguing only that the plaintiff has established a disparate treatment claim)); *see also*

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (holding that

the plaintiff abandoned hostile-work-environment claims, "by failing to argue that they should

survive [the defendant's] motion for summary judgment"). Under these circumstances, it is not

for the Court to make the plaintiff's arguments for him, or to decide despite his abandonment

whether he has raised a genuine issue of material fact about the existence of a hostile work

environment. Instead, the Court must consider the argument the plaintiff does make: whether

Herrera's conduct was an adverse employment action under a disparate treatment theory of Title

VII discrimination.

The plaintiff has not cited any case law (either pre- or post-*Muldrow*) that supports his

assertion that an alleged sexual assault may itself be an adverse employment action in this

context. But the Second Circuit has at least contemplated the possibility. In *Mathirampuzha v.

Potter*, 548 F.3d 70 (2d Cir. 2008), the court applied the disparate treatment standard and held

that a single event in which the plaintiff's supervisor "grabbed [his] arm, punched him in the

shoulder and the chest, spit in his face, and poked him in the eye" was not an adverse

employment action. *Id.* at 73. The court observed that in the context of hostile work

environment claims "a single event, if 'extraordinarily severe,' could alter the conditions of a

working environment." *Id.* at 79 (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d

---

these declarations contradict the affiants' previous testimony — indeed, nothing in the record suggests
that they have given previous sworn testimony in this case.

Cir. 2000)). For example, a "single incident of rape," "sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability" for sex-based discrimination. *Id.* at 79 (quoting *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001). The court emphasized, however, that the incident would have to "constitute an 'intolerable alteration' of the plaintiff's working conditions, so as to substantially interfere with or impair his ability to do his job." *Id.* (quoting *Howley*, 217 F.3d at 15 and citing *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 59 (2d Cir.2004)). The court, which seemed to blend the standards for disparate treatment and hostile work environment claims in the context of the record before it, concluded that the workplace assault was "not so severe as to alter materially the plaintiff's working conditions." *Id.* The Second Circuit did not hold — and has never held — that physical assault or sexual harassment qualify as adverse employment actions in the context of a Title VII disparate treatment claim.

The single case that plaintiff cites to support his theory (ECF No. 68 at 15) arose in a different context, and the court evaluated the motion under a different standard. In *Rivers v. New York City Hous. Auth.*, 176 F. Supp. 3d 229 (E.D.N.Y. 2016), the plaintiff asserted a First Amendment retaliation claim, and the court considered whether the plaintiff had proved there was an adverse action under that standard. *Id.* at 244, *aff'd sub nom. Crenshaw v. New York City Hous. Auth.*, 697 F. App'x 726 (2d Cir. 2017). The court concluded that "[p]hysical assaults qualify as adverse employment actions *for purposes of a First Amendment retaliation claim*." *Id.* at 261 (emphasis added); *see also Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 404 (E.D.N.Y. 2016) (collecting cases).

14

But the standard for an adverse employment action in the context of a disparate treatment claim is different than the standard for a retaliation claim. As one court in the circuit recently explained:

> The anti-discrimination provision [of Title VII] "'seeks a workplace where individuals are not discriminated against' because of traits like race and sex." It therefore outlaws all such discrimination in the workplace, even if the harm is minor. The anti-retaliation provision seeks to prevent employer actions which would "deter Title VII enforcement." It therefore punishes any harm that "causes significant enough harm to deter" employee complaints . . . . The retaliation provision does not aim to prevent only certain types of retaliation, but generally to prevent retaliation that would interfere with statutory enforcement.

*Bamba v. United States Dep't of Homeland Sec.*, No. 22-CV-7407, 2024 WL 3924810, at *16, n.19 (S.D.N.Y. Aug. 23, 2024) (internal citation omitted). This comports with the Supreme Court's caution that the phrase "terms and conditions of employment" — even when broadened beyond its "narrow contractual sense" — "circumscribes the injuries that can give rise to a suit" for discrimination under Title VII. *Muldrow*, 601 U.S. at 354.

The examples of adverse changes in terms or conditions of employment that the Supreme Court highlighted in *Muldrow* are also instructive. The Court held that each of the following were changes to terms or conditions of employment that caused "some harm:" "[a]n engineering technician is assigned to work at a new job site — specifically, a 14-by-22-foot wind tunnel; . . . [a] shipping worker is required to take a position involving only nighttime work; . . . a school principal is forced into a non-school-based administrative role supervising fewer employees . . . ." *Id.* at 355–56.

The record in this case does not support concluding that the three instances of sexual harassment alleged in this case constitute an adverse employment action "respecting an identifiable term or condition of employment," *id.* at 347, "at least without some showing about how it disadvantaged" the plaintiff, *Bonaffini*, 751 F.Supp.3d at 76. Adopting the plaintiff's

theory would swallow the distinction between disparate treatment and hostile work environment claims — which have different standards — contrary to Title VII case law and to precedent in this district holding that "a hostile work environment is 'not an adverse action for the purpose of [establishing] a disparate treatment claim.'" *Fernandez v. Wenig Saltiel LLP*, No. 19-CV-1979, 2024 WL 1345645, at *18 (E.D.N.Y. Mar. 29, 2024) (quoting *Desouza*, 2019 WL 2477796, at *4); *see also Schiraldi v. ProHEALTH Med. Mgmt., LLC*, No. 21-CV-5956, 2024 WL 4252051, at *11 (E.D.N.Y. Sept. 20, 2024) ("A hostile work environment claim is analyzed under different standards than disparate treatment claims.").[7]

If sexual harassment were an adverse employment action, a plaintiff would then have to establish an inference of discrimination, a burden easily established in most cases because sexual harassment is typically discrimination based on sex within the meaning of Title VII. Under the *McDonnell Douglas* framework, the burden would then shift to the employer to proffer a non-discriminatory reason for the adverse action. The employer would not in most cases be able to provide a non-discriminatory explanation for sexual harassment, for obvious reasons. And, in any event, it would be easy enough for a plaintiff to rebut that presumption at the third step. Indeed, the only reason that this case could potentially escape this quagmire is that the alleged sexual harassment was by an employee who, like the plaintiff, was a man. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("In same-sex (as in all) harassment

---

[7] A hostile work environment may, however, be the basis for a retaliation claim. For example, in *Carr v. New York City Transit Authority*, 76 F.4th 172 (2d Cir. 2023), the Second Circuit recognized a claim for a retaliatory hostile work environment. In that case, the court applied the retaliation standard and held that "[a] claim of 'retaliatory hostile work environment' must therefore be treated identically to a claim that an employer took multiple retaliatory actions that were, in the aggregate, 'materially adverse.'" *Id.* at 180. But while the allegations of a hostile work environment may be naturally subsumed within the elements of a retaliation claim, the same is not true for a disparate treatment claim.

cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.").

The plaintiff is surely right that pervasive sexual harassment leaves him "worse off." Moreover, "*Muldrow* instructs courts to be careful not to put too much weight on what constitutes an adverse employment action." *Bonaffini*, 751 F. Supp.3d at 78. But the plaintiff does not state a cause for disparate treatment. On this record, the Court cannot identify a "disadvantageous change" to a specific condition of employment. *Muldrow*, 601 U.S. at 347. Accordingly, the plaintiff has not established a *prima facie* case of employment discrimination under Title VII or the NYSHRL.

## II.    NYCHRL Discrimination Claim

The NYCHRL provides that it is "an unlawful discriminatory practice . . . [f]or an employer . . . [t]o discriminate against [an] individual in . . . terms, conditions[,] or privileges of employment" because of their gender, among other protected categories. N.Y.C. Admin. Code § 8-107(1)(a), (3). "[T]he NYCHRL requires that courts give the statute an independent and more liberal construction than its federal and state counterparts." *Sotomayor*, 862 F. Supp. 2d at 257. "The task of a court applying the NYCHRL is to 'first identify the provision of the City HRL [it is] interpreting and then ask, as required by the City Council: What interpretation 'would fulfill the broad and remedial purposes of the City's Human Rights Law?'" *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 75 (1st Dep't 2009)). "The NYCHRL does not distinguish between claims of 'discrimination' and 'harassment' or hostile work environment." *Anderson*, 2024 WL 2801986, at *11 (internal citation omitted).

"For a NYCHRL claim to survive summary judgment, the plaintiff need only show that her employer treated [him] 'less well than other employees,' at least in part for a discriminatory reason." *Williams v. New York City Hous. Auth.*, 61 F.4th 55, 69 (2d Cir. 2023) (citing *Mihalik*

17

*v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).  If a plaintiff makes this showing, his "employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes that discrimination played no role in its actions."  *Id.* (alterations adopted) (quoting *Mihalik*, 715 F.3d at 110, n.8).  Thus, even if "the plaintiff establishes that [he] was treated less well because of [his] protected characteristic, defendants may assert an affirmative defense whereby they can still avoid liability if the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences."  *Id.* (alterations adopted) (quoting *Mihalik*, 715 F.3d at 110–11).  Nevertheless, "the conduct's severity and pervasiveness are relevant only to the issue of damages," and therefore cannot support a defendant's motion for summary judgment.  *Id.* (quoting *Mihalik*, 715 F.3d at 110).

While the alleged sexual harassment cannot serve as the adverse action to support a Title VII or NYSHRL discrimination claim in this case, the plaintiff's testimony about Herrera's conduct — corroborated by the plaintiffs' co-workers — is sufficient to create a triable issue of fact under the NYCHRL.

The Second Circuit has held that under the NYCHRL, all employees are "entitled to an environment free from sexual harassment."  *Mihalik*, 715 F.3d at 114; *see id.* at 113–14 (reversing district court's grant of summary judgment because a jury could reasonably find that the plaintiff was treated "less well" than her male colleagues because she had to suffer unwanted sexual attention).  Indeed, courts in this circuit have held that conduct like Herrera's may form the basis of a hostile work environment claim.  *See Redd*, 678 F.3d at 179 (reversing grant of summary judgment where the plaintiff alleged that her supervisor, who was of the same-sex,

touched her breasts three times); *Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 521 (S.D.N.Y. 2000) (single incident where co-worker approached plaintiff from behind, gave her a bear hug, made a grunting sound, and slapped her left buttock three times sufficient to defeat motion for summary judgment on hostile work environment claim because "physical contact between the parties was neither harmless nor accidental"); *Guzman v. Macy's Retail Holdings, Inc.*, No. 09-CV-4472, 2010 WL 1222044, at *4 (S.D.N.Y. Mar. 29, 2010) (denying motion to dismiss hostile work environment claim where the plaintiff alleged that a co-worker "rubbed his genitals against her body, and then repeated that action after the plaintiff asked him to stop").

The defendants nonetheless argue that they are entitled to summary judgment because the plaintiff has not demonstrated that Herrera's conduct was because of his sex, as he must even under the more liberal NYCHRL standard, presumably because the plaintiff and Herrera are both men. (ECF No. 65 at 17.)[8] But the defendants' argument still misses the mark.

"[T]he question of whether considerations of the plaintiff's sex '*caused* the conduct at issue often requires an assessment of individuals' motivations and state of mind.'" *Redd*, 678 F.3d at 178 (2d Cir. 2012) (emphasis in original) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010)). When fact questions such as "state of mind or intent are at issue," as they often are in sexual harassment cases, summary judgment "should be used sparingly." *Id.* (internal quotation omitted). "So long as there is some evidentiary basis for inferring that facially sex-neutral incidents were motivated by the plaintiff's gender, the ultimate question of

---

[8] The defendants also argue that the allegations against Herrera were not sufficiently "severe or pervasive" to alter the conditions of employment. (ECF No. 65 at 19.) But this argument, in addition to not being especially persuasive, is not relevant to an NYCHRL discrimination claim at this stage. *See Anderson*, 2024 WL 2801986, at *11.

whether such abuse was 'because of' the plaintiff's gender is a question of fact for the factfinder." *Kaytor*, 609 F.3d at 548.

In cases of same-sex harassment, a plaintiff can establish that the harassment was "because of" his sex in a variety of ways. For example, he may present "credible evidence of the words and actions of a same-sex harasser [that] suggest sexual desire" from which "a rational juror can find that the harasser's conduct was based on sex, irrespective of whether the plaintiff provides evidence of the harasser's homosexuality." *Burke v. Villa*, No. 19-CV-2957, 2021 WL 5591711, at *7 (E.D.N.Y. Nov. 30, 2021); *see also id.* (collecting cases). The plaintiff could also show that same-sex harassment was discrimination based on sex by pointing to "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Redd*, 678 F.3d at 178 (quoting *Oncale*, 523 U.S. at 81).

When viewed in the light most favorable to the plaintiff, there is sufficient record evidence to create a triable issue of fact about whether Herrera's conduct was "because of" the plaintiff's sex. Most obviously, witnesses saw Herrera rub his genitals against several male co-workers (*see, e.g.*, Pl. 56.1 ¶¶ 7–11; Alexander Dep. 36:21–39:5; Wellington Dep. 42:14–45:7; ECF No. 69-6, Declaration of Joseph Edgar, ¶¶ 3–7; ECF No. 69-7, Declaration of Daniel O'Hare, ¶¶ 8–10, 12), but there was no evidence that he behaved the same way to the female employee who worked in the BME. (Alexander Dep. 40:19–41:3.) Moreover, a reasonable jury could find from the very nature of the harassment — grinding on the plaintiff's buttocks and caressing the plaintiff's arm — that Herrera was motivated by sexual desire.

To be sure, a jury could also find that Herrera was just joking. "But the line between teasing or hazing and sexual harassment is not always simple to discern, and it is not the court's

place to supplant the factfinder's role and make such determinations." *Burke*, 2021 WL 5591711, at *8 (internal quotations omitted).

Accordingly, the defendants' motion for summary judgment on the plaintiff's NYCHRL discrimination claim is denied.

## III.    Title VII, NYSHRL and NYCHRL Retaliation Claim

"Title VII prohibits an employer from discriminating against an employee because the employee has engaged in protected activity." *Banks*, 81 F.4th at 275.  "[T]he *McDonnell Douglas* framework applies to retaliation claims . . . brought under . . . Title VII." *Carr v. New York City Transit Auth.*, 76 F.4th 172, 178 (2d Cir. 2023).  To establish a Title VII retaliation claim, an employee must show that: "(1) [he] engaged in protected activity, (2) the defendant was aware of that activity, (3) [he] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Id.* at 180.  "The plaintiff's burden in this regard is '*de minimis*' and 'the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005)).  "Once a *prima facie* case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Summa*, 708 F.3d 115, 125 (2013) (citation omitted).  If the employer makes this showing, then the burden shifts back to the plaintiff to establish "that the reason offered by the employer is merely pretext, and that the employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'" *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. 2018) (quoting *Ya–Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015)).

The standard for evaluating a retaliation claim under Title VII and the NYSHRL are the same, so the Court analyzes them together. *See Sotomayor*, 862 F. Supp. 2d at 261.

Additionally, "the NYCHRL prohibits employers from 'retaliating or discriminating in any manner against any person because such person has opposed any practice forbidden under this chapter.'" *Mihalik*, 715 F.3d at 112 (cleaned up). The NYCHRL's retaliation provision is broader than Title VII's and operates as a "'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a floor below which the City's Human Rights law cannot fall.'" *Id.* at 109, 112 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). Therefore, if summary judgment is denied under the more exacting federal and state standards — as the Court determines it should be — it must also be denied under the NYCHRL.

### a.    *Prima Facie* Case

The defendants do not dispute that the plaintiff engaged in protected activity when he complained about Herrera's alleged harassment or that the defendants were aware of the conduct. They argue instead that the asserted retaliatory conduct is not a materially adverse and that even if it was, there was no causal connection between the protected activity and the materially adverse action. For the reasons that follow, the plaintiff has raised a genuine dispute of material fact, and the defendants' motion for summary judgment on the retaliation claim is denied.

#### i.    *Materially Adverse Action*

To establish a materially adverse action in the retaliation claim context, a plaintiff must demonstrate that an employer's actions are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "[P]etty slights, minor annoyances, and simple lack of good manners will not" usually constitute adverse actions under this standard. *Id.*

The question is solely "whether the actions, taken in the aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination." *Carr*, 76 F.4th at 181; *see also Hicks*, 593 F.3d at 165 ("[T]he alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006))). "This standard is plainly an objective one," but "in identifying materially adverse employment actions, 'context matters,'" and "an act that would be immaterial in some situations is material in others." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (quoting *Burlington Northern*, 548 U.S. at 69).[9]

The plaintiff asserts five actions that constitute materially adverse employment actions: (i) "being yelled at and berated," (ii) "being menaced with a garbage truck," (iii) "being blamed for costing the unit overtime," (iv) "being banished from his unit," and (v) "having his complaint summarily dismissed." (ECF No. 68 at 18.) While none of these actions individually would qualify as an adverse employment action, drawing all permissible factual inferences in favor of the plaintiff, there is a genuine dispute of material fact as to whether these actions in the aggregate would dissuade a reasonable employee from making a complaint.

First, the plaintiff contends that after he approached Herrera's superiors to complain about his conduct, Herrera confronted the plaintiff about an unfinished truck repair. (Pl. 56.1 ¶ 15.) The plaintiff claims that he was not assigned to work on the truck and did not know why he was being singled out. (*Id.*) He further testified that he tried to walk away from Herrera, but Herrera followed him and reminded him that he was a provisional employee, implying that he

---

[9] Although the retaliation standard "covers a broader range of conduct than does the adverse-action standard for claims of discrimination," *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 517 (E.D.N.Y. 2019), the *Muldrow* Court held that the "materially adverse" standard in a retaliation context was unaffected by its holding. *Muldrow*, 601 U.S. at 348.

had fewer protections from termination.  (Pl. Dep. 74:18–75:3.)  Soon after, Pat Moran, a BME supervisor, summoned the plaintiff to Christopher Volpe's office.  (*Id.* 75:4-6.)  According to the plaintiff, Volpe accused him of being a problem, called him a "snowflake" and a "crusader," and said that some employees were "untouchable."  (*Id.* 75:7-19.)  The plaintiff also claimed that Volpe threatened to send him for a psychological evaluation.  (*Id.* 117:19-22.)

These actions, by themselves, "fall within the realm of prototypical workplace incidents that are not actionable under Title VII's anti-retaliation provision."  *Sesay-Harrell v. NYC Dep't of Homeless Servs.*, No. 12-CV-925, 2013 WL 6244158, at *20 (S.D.N.Y. Dec. 2, 2013).  In general "an employer's criticism of an employee's work, without more, does not constitute an adverse employment action."  *Jones v. Brookhaven Sci. Assocs., LLC*, No. 23-CV-4194, 2024 WL 4145777, at *15 (E.D.N.Y. Sept. 10, 2024) (citing *Carr*, 76 F.4th at 180).  The same is true of "[a] single instance of yelling."  *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 103 (S.D.N.Y. 2023) (collecting cases); *see also Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 109 (E.D.N.Y. 2011) ("[R]eprimands that do not lead to materially adverse employment consequences are not actionable forms of retaliation.").  Indeed, even verbal threats of termination or retaliation do not constitute materially adverse employment actions.  *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011) (threat of termination not adverse employment action); *Rivers*, 176 F. Supp. 3d at 251 ("Threats of retaliation standing alone do not generally constitute adverse employment actions.").

Second, the plaintiff testified that while his EEO complaint was pending, Anthony Dinome, a co-worker who was aligned with the management and Herrera, purposely backed a garbage truck into a work bay that the plaintiff was cleaning, even after the plaintiff told him to stop, and came so close to the plaintiff that he knocked over the garbage can that the plaintiff

was using.  (Defs. 56.1 ¶ 25; Pl. Dep. 101:22–103:7.)  The plaintiff reported the incident to

Moran, who did nothing; and then to Volpe; Volpe called the police, despite the plaintiff's plea

that he not do so, apparently to create the impression that the plaintiff called the police on a co-

worker.  (Pl. Dep. 103:13–104:23.)

 While a closer case, this conduct alone does not constitute an adverse employment action.

For example, it is not enough that the plaintiff was embarrassed or anxious because Volpe called

the police; "courts have repeatedly held that such behavior does not amount to an adverse

employment action in a retaliation context." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,

665 F. Supp. 3d 412, 461 (S.D.N.Y. 2023) (holding that "embarrass[ing], humiliat[ing], and

berat[ing]" the plaintiff in front of more than 50 colleagues was not a materially adverse action

and collecting cases).  Nor does Dinome's conduct constitute an adverse employment action,

because, by itself, it would not dissuade an employee from filing a complaint.

 Third, the plaintiff maintains that overtime across the BME floor was limited after he

filed his EEO complaint and that Sean McCaffery, who was responsible for assigning overtime,

told the BME employees that the change was in fact a result of the plaintiff's complaint.  (Pl.

56.1 ¶ 21; Alexander Dep. 114:23–115:9, 117:15–24.)  The BME-wide policy reducing overtime

is not an adverse employment action by itself.  *See Carr*, 76 F.4th at 180 ("We have held that

absent allegations of more direct hostile conduct, a reasonable employee would not be dissuaded

from taking protected action simply because they are subject to the same policies as other

employees.").  Otherwise, McCaffery's comments — although they singled out the plaintiff —

fall into the same category of embarrassing or anxiety-inducing conduct that on their own are not

objectively material enough to dissuade a reasonable employee from making a complaint.  *Id.* at

181.

Fourth, the plaintiff argues that his involuntary transfer from the BME to the BMM was a materially adverse action. "Reassignment of job duties may constitute a materially adverse employment action." *Rios v. Max Mara USA Inc.*, No. 23-CV-9839, 2025 WL 66502, at \*12 (S.D.N.Y. Jan. 10, 2025) (citing *Burlington Northern*, 548 U.S. at 71). "However, '[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Id.* (quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006)). This transfer does not meet any of the hallmarks that are typically present when courts find involuntary transfers are materially adverse employment actions. *See, e.g.*, *Wilkinson v. New York State*, No. 18-CV-4148, 2019 WL 5423573, at \*13 (E.D.N.Y. Oct. 22, 2019) ("Less prestigious assignments could be materially adverse to a reasonable employee." (internal quotation omitted)); *Hodges v. Attorney Gen. of U.S.*, 976 F. Supp. 2d 480, 495 (S.D.N.Y. Sept. 30, 2013) ("assignment to the first floor communications room and the refusal to honor [the p]laintiff's 'bids' for an assignment to the third floor communications room" insufficiently material for Title VII retaliation claim). For instance, the plaintiff's title and pay were identical, and his job responsibilities and schedule changed only slightly. (Defs. 56.1 ¶ 23; Pl. Dep. 99:2-19.)

Finally, the plaintiff insists that his supervisors' and the OEDI's failure to investigate his complaints was an adverse employment action. But "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." *Kelly*, 200 F. Supp. 3d at 404. Accordingly, individually, none of the alleged adverse actions are sufficiently material.

However, when these incidents are viewed in the aggregate and in the light most favorable to the plaintiff, this conduct is more than sufficient to meet the plaintiff's *de minimis* burden at step one.  The record establishes clearly that directors, supervisors, and co-workers targeted the plaintiff, ostracized him and tried to diminish him in the eyes of his colleagues.  In the context of a retaliation claim, where "[t]he scope of actions that may be materially adverse . . . is broader than those actions prohibited by Title VII's anti-discrimination provisions . . . and 'extends beyond workplace-related or employment-related retaliatory acts and harm,'" *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 224–25 (E.D.N.Y. 2014) (quoting *Hicks*, 593 F.3d at 165), the record evidence demonstrates that the defendants' conduct could dissuade a reasonable employee from making a complaint.

### ii.    Causal Connection

The plaintiff has also demonstrated a causal connection between the adverse actions and the protected activity.  A plaintiff can establish a "causal connection" in a retaliation claim "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (citation omitted).  "A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."  *Banks*, 81 F.4th at 277 (alteration adopted) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).  The Second Circuit has "not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," but has "previously held

that a period of several months can demonstrate a causal connection between the protected activity and the alleged adverse action." *Id.*

In this case, the worst of the defendants' conduct happened in the four-month period immediately after the plaintiff filed his EEO complaint. That alone is sufficient to demonstrate a causal connection. *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001) (four months between employment action and protected activity was sufficient to support an inference of a causal connection). Moreover, when viewed in the light most favorable to the plaintiff, the record is replete with evidence of retaliatory animus.

### b.    Legitimate, Non-Retaliatory Reason for Adverse Action

"Once the plaintiff has established a *prima facie* showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). The defendants say that Herrera reprimanded the plaintiff in late July because the truck was in his work bay and therefore his responsibility. (ECF No. 63-6, Transcript of Osman Herrera's Deposition 78:19–79:14). They also argue that Dinome's conduct was entirely innocent, and that Volpe called the police because "there was an attempted assault." (Moran Dep. 126:5-11.) As to overtime, the defendants maintain that it was limited simply because there were fewer trucks coming in (Moran Dep. 37:5-9), and otherwise deny that McCaffery ever blamed the plaintiff (ECF No. 63-8, Transcript of Sean McCaffery Deposition 78:14-21). The defendants contend that they transferred the plaintiff to make the work environment better for everyone — including the plaintiff. (ECF No. 65 at 21.)[10]  And finally, the defendants deny that the investigation was

---

[10] The plaintiff also testified that a supervisor told him that he was being transferred because they needed another worker on the fourth floor. (Pl. Dep. 113:25.)

insufficient.  These explanations are sufficient to shift the burden back to the plaintiff to establish that they are pretextual.

### c.      Pretext

At the third step, "a plaintiff alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Zann Kwan*, 737 F.3d at 845.  "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 846.  "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Id.* "The determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." *Id.* at 846 n.5.

When viewed in the light most favorable to the plaintiff, a reasonable juror could find that retaliation was a but-for cause of the adverse action.  That is especially true because other witnesses and evidence corroborate the plaintiff's account.  For example, at least one employee confirmed that he heard McCaffery say that overtime was limited because of the plaintiff's complaint.  (Alexander Dep. 117:15-24.)  Moreover, McCaffery made that statement just a few days after a Deputy Director brought up the confidential investigation on the shop floor.  (Pl. 56.1 ¶¶ 20–21.)  As for the call to the police, the plaintiff's account of what happened was buttressed by another employee's testimony that he heard the plaintiff was the one who called

the police, evidence that suggests that Volpe had a retaliatory motive.  (Pl. Dep. 104:14-23; Alexander Dep. 123:4-14.)  Finally, the defendants offered inconsistent reasons for the plaintiff's transfer, which raises a material fact issue best left to a jury.  *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 170 (2d Cir. 2001) ("[A] jury issue on the question of pretext may be created when an employer offers inconsistent and varying explanations for its decision to terminate a plaintiff.").

Accordingly, the plaintiff has carried his burden at the third step, and the defendants' motion for summary judgment on the Title VII and NYSHRL retaliation claims is denied.

## IV.   State and City Claims for Aiding and Abetting Against All Defendants

"To state a claim for aiding and abetting unlawful discrimination or retaliation [under NYSHRL], a plaintiff must plead that the defendant 'actually participate[d]' in the unlawful conduct of the principal actor."  *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)).  A defendant co-worker may be held personally liable under the NYSHRL if he or she "actually participates in the conduct giving rise to a discrimination claim."  *Achee v. Inc. Vill. of Valley Stream*, No. 20-CV-5294, 2023 WL 7130717, at *13 (E.D.N.Y. Oct. 30, 2023) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995)).  "[T]he case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under NYSHRL § 296(6)."  *Id.* (internal quotation omitted).  The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical."  *Feingold*, 366 F.3d at 158.

The plaintiff has raised questions of fact as to whether Herrera, Moran, Ianniello, and Dinome participated in the conduct underlying the plaintiff's surviving state and city claims. The evidence that Herrera harassed the plaintiff raises a factual question about whether Herrera

participated in the other conduct. There is also a genuine dispute of fact about whether supervisors Moran and Ianniello had a responsibility to do more to stem the harassment. Moreover, affording the plaintiff every reasonable inference, there is also a question of fact as to whether Dinome participated in the retaliatory conduct when he backed the truck into the work bay that the plaintiff was cleaning and whether Moran retaliated against the plaintiff by cutting overtime to the BME.

However, summary judgment is appropriate for Neal, because there is no evidence that she participated in the harassment or was a supervisor. The plaintiff's complaint that she retaliated by mishandling the OEDI investigation is not sufficient, because incomplete or inadequate investigation of a claim cannot be retaliation for filing that claim.

## CONCLUSION

The defendants' motion for summary judgment is granted in part and denied in part. The plaintiff's claim for employment discrimination under the New York City Human Rights Law and his claim for retaliation under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law may proceed. All other claims are dismissed.

Further, the claims against individual defendants Osman Herrera, Patrick Moran, Anthony Dinome, and Giovanni Ianniello may proceed. The claims against the remaining individual defendants are dismissed.

**SO ORDERED.**

                                      s/Ann M. Donnelly
                                 ANN M. DONNELLY
                                 United States District Judge

Dated: Brooklyn, New York
       March 30, 2025